IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JANARI L. MCKINNIE,

                      Plaintiff,

    v.

MARK HEISZ, BRAD WOLFGRAM, ALAN
MORRIS, JANEL NICKEL, ANTHONY
ASHWORTH, LESLIE WINSLOW-STANLEY,
GREG GRAMS, DALIA SULIENE, STEVE
HELGERSEN and SANDRA SITZMAN,

                      Defendants.

OPINION and ORDER

09-cv-188-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this prisoner civil rights case, I allowed plaintiff to proceed on his claims that:

(a) defendants Mark Heisz, Brad Wolfgram, Alan Morris, Janel Nickel and Greg Grams violated his Eighth Amendment rights by failing to protect him from a substantial risk of serious harm at the hands of other inmates;

(b) defendants Dalia Suliene, Steve Helgersen and Sandra Sitzman violated his Eighth Amendment rights by failing to provide adequate medical care after plaintiff was assaulted;

(c) defendants Heisz and Wolfgram retaliated against him for reporting their misconduct to their superiors;

1

(d) defendants Heisz and Wolfgram violated his free speech rights by blocking his mail to defendants Nickel, Morris and Grams;

(e) defendants Anthony Ashworth and Nickel violated his free speech rights by holding his incoming and outgoing mail; and

(f) defendants Ashworth, Leslie Winslow-Stanley and Nickel violated his free speech rights by retaining grievances and documents of plaintiff's that had been confiscated during a search.

Now before the court is defendants' motion for partial summary judgment for plaintiff's failure to exhaust his administrative remedies. They seek summary judgment on claim (a) with respect to defendants Morris, Nickel and Grams and on claims (b)-(f) in their entirety. Defendants' motion will be denied with respect to plaintiff's claim that defendants Morris, Nickel and Grams failed to protect him. Although plaintiff did not name those defendants in his grievance, he provided enough information in the grievance to alert the prison to the nature of the wrong. However, I will grant defendants' motion with respect to the remaining claims. Plaintiff never filed any grievances related to those claims and although he contends that defendants prevented him from doing so, the facts he adduces are not sufficiently specific to establish that he attempted to grieve any of these issues and was prevented from doing so.

In addition, plaintiff has filed a second motion for appointment of counsel. That

2

motion will be denied because plaintiff has not shown that he is unable to litigate this relatively simple case.

### A. Failure to Protect Claim: Defendants Morris, Nickel and Grams

First, defendants move for summary judgment on plaintiff's claim that defendants Morris, Nickel and Grams failed to protect him from an injury he suffered at the hands of two other prisoners. As defendants point out, plaintiff filed only one grievance related to this matter, a grievance focused on the role of defendants Wolfgram and Heisz in failing to prevent the incident while they were on duty.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit in federal court. To meet the exhaustion requirement of § 1997e(a), a prisoner's grievance must afford the prison grievance system "a fair opportunity to consider the grievance," which requires generally that the grievant "compl[y] with the system's critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 94 (2006). The level of specificity a prisoner must provide to satisfy this requirement is determined by what the administrative system requires. Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002). An administrative system may impose pleading requirements more strict than mere "notice-pleading." Id. In Strong, the court identified the "default" rule for sufficient notice:

> When the administrative rulebook is silent, a grievance suffices if it alerts the

3

> prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.

Strong, 297 F.3d at 650. A review of the Wisconsin Administrative Code reveals that it contains few content-related requirements for inmate complaints. Wis. Admin. Code § DOC 310.09(1) requires the inmate to type or write the complaint legibly, sign the complaint, refrain from using abusive or obscene language, file the complaint under his assigned name and "clearly identify" a single issue as the subject of the complaint. Nothing in the Wisconsin Administrative Code requires an inmate to name all individuals responsible for the issue identified in the complaint. Because the Wisconsin administrative system does not require names to provide notice of a claim, the Strong default rule applies.

Basic notions of fairness support the conclusion that an inmate need not identify responsible individuals related to an incident in every case. In most instances, it is not necessary to identify the responsible parties in an inmate complaint to achieve the purpose of administrative exhaustion, which is to give prison officials a chance to resolve the complaint without judicial intervention. Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 537-38 (7th Cir. 1999) (exhaustion serves purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation"). Moreover, as I have noted before, a requirement that an inmate name names in all cases would likely be invalid unless the inmate is provided a

4

right to engage in timely discovery. Freeman v. Berge, 2004 WL 1774737, *4, Case No. 03-C-21-C (W.D. Wis. July 28, 2004) (citing Strong, 297 F.3d at 649).

Plaintiff filed a grievance about the incident in which he was injured by two other prisoners. Although plaintiff's grievance focused on the role of defendants Heisz and Wolfgram, he also stated that he "should not have been allowed on the tier" in the first place "in order to protect [him] from potential harm," and later stated that he "want[s] all of those responsible to be held accountable." Once defendants were notified of the alleged incident and plaintiff's concern with both the roles of those defendants named and his placement on the tier in general, they had all the notice they needed to investigate plaintiff's complaint and resolve it. Even though plaintiff did not identify every person involved in the incident, he "alert[ed] the prison of the nature of the wrong." Thus, as to this claim, defendant's motion for partial summary judgment will be denied.

## B. Remaining Claims

The remaining claims involve incidents that began occurring around the time plaintiff was injured by other prisoners on November 1, 2006 and continuing until he was transferred in February 2007. Neither plaintiff nor his former cellmate Shawn Pierce filed a grievance regarding any of these claims. (Pierce has been active in advocating plaintiff's cause, filing grievances in his name and helping plaintiff prepare his filings in this case, a matter I discuss

5

below.) Plaintiff contends that administrative remedies were not available for these claims because defendants Wolfgram and Heisz prevented him from filing the remaining grievances by refusing to provide him the required grievance forms and by refusing to file the forms plaintiff did complete. (Section 1997e requires only that a prisoner exhaust all *available* administrative remedies.)

Anticipating plaintiff's argument, defendants point out that from November 22, 2006 to January 5, 2007, plaintiff was housed in general population, where prisoners are permitted to pick up offender complaint forms without asking for the forms from correctional officers and can deposit the offender complaint forms in a locked box to which neither Wolfgram nor Heisz has the key. Moreover, at some times within this time period, plaintiff was able to file grievances successfully; he filed four such grievances between November 27, 2006 and February 9, 2007. One of those grievances focused on defendants Wolfgram's and Heisz's failure to protect him from harm and the others were on matters unrelated to any claim in this lawsuit.

Plaintiff fails to provide the evidence necessary to support his contention that defendants blocked his attempts to file grievances, particularly in light of defendants' undisputed evidence that the grievance procedure was available and plaintiff used it for other matters. Most of the evidence plaintiff adduces to support his contention that defendants blocked his ability to grieve does not provide detail specific enough to meet the requirements

6

of Fed. R. Civ. P. 56(e)(3), which requires plaintiff to "set out specific facts showing a genuine issue for trial." Instead, plaintiff provides a number of general allegations that he and Pierce were not able to get grievance forms and that defendants confiscated some unidentified grievances that plaintiff intended to send out against "all" defendants. At one point, Pierce even states that defendants "prevented us from filing grievances for months and knew that the time limits had expired" when they finally handed over grievances after plaintiff was transferred.

To survive summary judgment, plaintiff is required to show that, for each claim, administrative remedies were unavailable. In other words, plaintiff needs to point to specific instances in which he attempted to grieve the *specific claims* he now brings and was prevented from doing so. The only specific instances plaintiff identifies that are relevant to the claims at issue are as follows. First, on November 20, 2006, Shawn Pierce wrote a grievance related to plaintiff's complaint of headaches and back pain to the inmate complaint examiner on a blank sheet of paper because Heisz and Wolfgram told Pierce that there were no forms available on the unit. The grievance was "returned" because it was not on the proper form, and plaintiff and Pierce were "denied the proper forms 3 days in a row." Next, on December 3, 2006, Pierce asked Wolfgram for grievance forms so he could complain about Wolfgram's threats to transfer plaintiff and was told to "give it a fucking rest, it will never get there."

The problem with each of these instances is that in neither one does plaintiff

7

overcome defendants' evidence that plaintiff could have filed the grievance despite the alleged interference. As defendants aver, within this same time period, plaintiff was generally able to obtain and file grievances. Moreover, although plaintiff alleges generally that Wolfgram and Heisz were taking grievances of his (and identifies one instance in which Pierce saw an unidentified interview request of his in Wolfgram's shirt pocket), there is no evidence that either plaintiff or Pierce ever attempted to file a grievance on either of these matters once the forms became available or that the forms were not available at any time before the deadline ran out for filing each of those grievances. At most, plaintiff establishes a three-day delay in filing one of the grievances, and perhaps a one-day delay in filing the other one. (In reality, the facts do not really establish even a one-day delay; only Wolfgram and Heisz allegedly interfered with access to papers and there is no evidence that these two were the only officers from whom the forms could be requested when the forms were not freely available to prisoners general population.) These facts hardly support a finding that administrative remedies were "unavailable."

Plaintiff introduces a lot of other evidence, all irrelevant. It is irrelevant, for example, whether plaintiff has specific evidence of denial of grievance forms for claims that have been dismissed from this suit. (Pierce avers that he requested and was denied grievance forms on November 22, 2006 and November 23, 2006 to grieve Wolfgram and Heisz's failure to provide prescription pain medication.) In addition, Pierce's letters and statements to others

8

made outside the grievance procedure (including his verbal statement in passing to the complaint examiner regarding unidentified written complaints that the examiner was ignoring) have no bearing on whether administrative remedies were available. Finally, evidence of defendants' bad actions or plaintiff's suffering are equally irrelevant. What matters at this stage is whether defendants blocked plaintiff from filing grievances raising the specific claims he now seeks to pursue. On the question of what specific grievances he attempted to file and exactly how defendants interfered, the evidence plaintiff presents is sparse and, as I have explained, inadequate. Because defendants have shown that plaintiff did not exhaust his administrative remedies on claims (b)-(f), I will grant defendants' motion for summary judgment as to those claims.

### C. <u>Shawn Pierce and Fraud on the Court</u>

In their reply brief, defendants contend that plaintiff opposed summary judgment by submitting fraudulent documents to the court. In particular, defendants point to documents that Pierce says he wrote to prison officials complaining about those matters underlying plaintiff's claims. Dkt. #42, Exhs. 3, 4, 6, 7, 9, 11 and 12. I did not consider any of these documents because they do not represent attempts to follow the grievance process and were therefore not relevant to the question at issue.

However, defendants' concern bears consideration. Defendants point out that the

9

documents are supported by declarations of authenticity signed by Shawn Pierce on varying dates in 2008, before the case was filed. This is particularly interesting because the declarations contain the 2009 case number and because of the variance in some dates between the declarations filed with the court and the copies filed with defendants' counsel. Another problem is that Shawn Pierce's principal declaration is dated January 6, 2008. In that document, in which Pierce describes his inability to grieve the matters at hand, Pierce refers to incidents occurring after January 6, 2008, making it impossible that the document was signed when it was dated.

Moreover, defendants believe that Shawn Pierce may be the "driving force behind this litigation." Defs.' Rep. Br., dkt. #44, at 2 n.1. There is good reason to suspect as much; the handwriting on most documents throughout the case appears to be that of Pierce's and the facts of the case show Pierce as having taken a key role in presenting plaintiff's concerns to prison officials.

Aside from relatively minor points regarding the signature dates on the documents submitted by Pierce, however, defendants' only proof of "fraud" comes from defendants' testimony that they never received the allegedly false letters written by Pierce and that they received other letters with conflicting statements. The letters and the context in which they are submitted are suspicious, and it may be that the letters are false, but I am not inclined to pursue a mini-trial on the question of fraud when the allegedly fraudulent documents were

10

used to support matters not relevant to the question at hand.

If, however, fraudulent documents are submitted to the court in the future (such as in opposition to summary judgment on the merits), both plaintiff and Pierce could face consequences. Plaintiff could face dismissal of his case and monetary sanctions and Pierce could be prevented from assisting other prisoners with their legal matters before this court or, in some circumstances, face charges of perjury. As the case proceeds, plaintiff should proceed with caution. So should Pierce, to the extent plaintiff decides to continue relying on his help.

### D.  Motion for Appointment of Counsel

The final matter before the court is plaintiff's second motion for appointment of counsel. I denied plaintiff's first motion for appointment of counsel after finding that, although plaintiff had made reasonable efforts to find counsel, his circumstances did not warrant appointment of counsel. Dkt. #21. Plaintiff contended that he needed counsel because of his imprisonment, his protective custody status, his difficulty understanding legal proceedings and because a lawyer could better present evidence and cross-examine witnesses. I explained that most of the problems were universal problems for pro se prisoner litigants, that his protective custody status at most affected deadlines, that his difficulty with legal proceedings could be addressed by reading the court's instructions and that his case was not

factually complex.

Plaintiff adds little to his second motion for appointment of counsel. He states that he is in the segregation unit, dkt. #55, which impedes his ability to litigate even more, but again, this affects only the ability to meet deadlines, a matter that can be addressed as it comes up. Plaintiff adds that, without a lawyer, he will have a harder time obtaining demonstrative photographs and other evidence and attempting to subpoena witnesses. However, these disadvantages are no different from those of all pro se prisoner litigants. At any rate, plaintiff may be able to obtain such evidence and demonstrative exhibits without the help of a lawyer, by working with defendants' counsel or, if that does not work, by bringing the matter to the court's attention.

Plaintiff does state that he suffers from post-traumatic stress disorder, depression, insomnia, loss of appetite, back, neck and head pain, daily flashbacks and auditory hallucinations. He further states that he has recently attempted to commit suicide, which is the reason he is in segregation. Plaintiff's experience is unfortunate, but does not entitle him to counsel at this point. Undoubtedly, the physical and psychological difficulties plaintiff says he faces would make it more difficult to litigate a case, just as it would make it more difficult to do many other things. However, the barriers plaintiff describes are not insurmountable. What plaintiff has not shown is that those barriers make it impossible for him to coherently prosecute the case on his own, particularly in light of its simplicity. <u>Pruitt</u>

12

v. Mote, 503 F.3d 647, 655 (7th Cir. 2007) (relevant question is whether factual and legal difficulty of case exceeds plaintiff's capacity to coherently present case to judge or jury himself).  Given today's decision to grant most of defendants' motion for summary judgment, the case has been trimmed down to a single Eighth Amendment claim against a handful of defendants.  In light of the screening order describing the legal requirements of that claim and the court's rules, which plaintiff has received, plaintiff should be able to pursue discovery and present his case on that claim with minimal difficulty.  To this point, plaintiff has managed to make coherent arguments and follow the court's procedure.  If plaintiff declines to receive further assistance from Shawn Pierce and his filings become markedly less coherent, the court may reconsider the request for appointment of counsel.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Mark Heisz, Brad Wolfgram, Alan Morris, Janel Nickel, Anthony Ashworth, Leslie Winslow-Stanley, Greg Grams, Dalia Suliene, Steve Helgersen and Sandra Sitzman, dkt. #26, is

    a. DENIED with respect to plaintiff Janari L. McKinnie's claim that defendants Morris, Nickel and Grams violated his Eighth Amendment rights by failing to protect him from a substantial risk of serious harm at the hands of other

13

inmates; and

  b. GRANTED as to all other claims.

2. Plaintiff's complaint is DISMISSED as to defendants Ashworth, Winslow-Stanley, Suliene, Helgersen and Sitzman.

3. Plaintiff's second motion for appointment of counsel, dkt. #50, is DENIED.

Entered this 7th day of October, 2009.

        BY THE COURT:

        /s/

        _____
        BARBARA B. CRABB
        District Judge