IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JANARI L. MCKINNIE,

                              OPINION and ORDER

           Plaintiff,

                              09-cv-188-bbc

     v.

MARK HEISZ, BRAD WOLFGRAM,
ALAN MORRIS, JANEL NICKEL
and GREG GRAMS,

           Defendants.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Janari L. McKinnie is proceeding on his claim that defendants Mark Heisz, Brad Wolfgram, Alan Morris, Janel Nickel and Greg Grams failed to protect him from an assault he suffered at the hands of other prisoners. Now before the court is defendants' motion for summary judgment and related motions, including two motions by plaintiff to deny defendants' motion for summary judgment and a motion by defendants to strike plaintiff's late summary judgment filings. I will deny defendants' motion to strike, but grant

---

[1] In a previous order, I dismissed plaintiff's complaint as to defendants Anthony Ashworth, Leslie Winslow-Stanley, Dalia Suliene, Steve Helgersen and Sandra Sitzman. I have amended the caption accordingly.

1

their motion for summary judgment (and deny plaintiff's related motions to deny the motion for summary judgment). Although plaintiff filed his brief in opposition and supporting materials about two weeks late, he did so after filing a timely request for an extension and explaining that his materials were late in part because of the delay created in mailing items back and forth to his assistant, his former cellmate Shawn Pierce, who is doing the legwork in this litigation. Dkt. #109. Although defendants have requested an opportunity to file a brief in reply and a response to plaintiff's proposed findings of fact in the event their motion to strike fails, that will not be necessary. Plaintiff fails to submit evidence that would allow a reasonable jury to infer that any defendant was aware that plaintiff was at substantial risk of being assaulted by other prisoners.

Before turning to the facts, a word about procedure is in order. A number of plaintiff's proposed findings of fact and responses to defendants' proposed findings of fact have been disregarded, including certain key facts. Many of these facts rely on affidavit testimony that lacks foundation, which means the person providing the testimony does not give information that would allow an inference that he or she has personal knowledge of the things about which they are testifying. <u>Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan International, Inc.</u>, 533 F.3d 555, 562 (7th Cir. 2008) (affirming district court's decision to disregard statements lacking foundation).

2

To give a few examples, plaintiff proposes as fact that defendants Wolfgram and Heisz knew that the assaulting prisoners were upset with plaintiff. His only basis for that assertion is that his cellmate Shawn Pierce told Morris, the supervisor of Wolfgram and Heisz, and because generally, Morris would "always" tell Pierce that he had talked to Wolfgram and Heisz about things. Pierce does not aver that Morris told him that he had talked to Wolfgram and Heisz about this matter in particular, Also, plaintiff and Pierce aver that Heisz heard the assault against plaintiff from inside the security bubble, but neither explains how he could know what a prison official could hear from within the security bubble. Plaintiff also avers that Wolfgram called Heisz before allowing plaintiff to enter his cell "to make sure Evans and Essex were out" of their cells but does not explain how he knows the details of Wolfgram's call or its purpose. These and similar averments have been disregarded for lack of foundation.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed. Several facts are in dispute. For disputed facts that warrant discussion, I describe only plaintiff's version because plaintiff is the non-movant. Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003).

UNDISPUTED FACTS

On October 26, 2006, prison officials found "hooch" (home-made intoxicants) in the

3

cell of Kenneth Evans and Samuel Essex and placed them on temporary lockup status. Evans and Essex blamed plaintiff for their temporary lockup status because they thought he should have warned them about the cell search. Prisoners in temporary lockup are released from their cells to take showers. Ordinarily, this happens in the morning, but on occasion, it may happen in the afternoon. It is against prison policy to allow the movement of other prisoners while prisoners in temporary lockup status are taking showers, but it often "cannot be avoided" and is a common occurrence. Thus, if a prisoner receives a pass to go to the Health Services Unit, he may be released to that unit during temporary lockup showers.

(According to plaintiff, after Evans and Essex were placed in temporary lock-up, Pierce sent an interview/information request to defendant Morris, stating that Evans and Essex were threatening plaintiff and blaming him for the raid Morris conducted on the housing unit. Pierce also sent letters to defendants Nickel and Grams, stating that Evans and Essex planned on assaulting plaintiff, that Evans and Essex were currently in temporary lock up and that Pierce had already told Morris about his concerns.)

Defendant Wolfgram was a unit sergeant at the Columbia Correctional Institution and defendant Heisz was a corrections officer. Around the time of the assault, both worked in plaintiff's unit. Neither was aware that Evans and Essex blamed plaintiff for their temporary lockup status. In the past, both plaintiff and Pierce had reported Wolfgram and Heisz to their superiors for violating policies and procedures. (According to plaintiff, Heisz

4

was aware that Pierce had been writing to Heisz's superiors about his and Wolfgram's alleged violations of policies and procedures. On August 5, 2006, Heisz asked Pierce why he was "going over his and Wolfgram's heads.")

On November 1, 2006, Wolfgram told Heisz to have the temporary lockup prisoners shower in the afternoon because "they were too busy" to do the showers in the morning. At around 1:00 p.m., Heisz was in the security "bubble" overlooking the unit. At that time, he released inmates Evans and Essex to use the showers. (According to plaintiff, Pierce saw Evans's and Essex's door cracked open as early as 12:25 p.m. on November 1, 2006, although he acknowledges that he had no way of knowing whether they went to the showers before 1:00 p.m.) Prisoners not out on passes would have been in their cells by 1:00 p.m. because lunch serving is completed by that time. After Heisz released Evans and Essex, he saw Essex carry shower items into the shower and saw Evans inside a shower stall. Temporary lockup showers lasted between fifteen and twenty minutes.

Soon after Evans and Essex were released from their cell for showers, plaintiff left his job in the servery and asked to use the bathroom in his cell. (According to plaintiff, he asked Wolfgram, who was sitting at a desk in the dayroom. Wolfgram then called Heisz in the bubble.) At the time that plaintiff asked to use the bathroom, Heisz had not seen Evans go back to his cell and noted that Essex was still in the shower. The showers are located between the security bubble and plaintiff's cell. Other prisoners were in their cells and the

5

only cell door unlocked was that of Evans and Essex.

Heisz allowed plaintiff to return to his cell. According to prison policy, once plaintiff entered his cell, he was required to lock his cell. Plaintiff did not lock his cell because he was planning on returning to his job at the servery after using the bathroom. While plaintiff was on the toilet, Evans stepped into the cell and asked plaintiff why he did not warn him that officers were going to search the unit. After plaintiff responded that he was not obligated to tell Evans anything, Evans started throwing punches at plaintiff's head and face. A few seconds later, Essex entered the cell. Both Evans and Essex started to kick plaintiff, somewhere around fifteen to twenty times before running out of the room and locking the door behind them. The entire incident lasted approximately one minute. Heisz did not see or hear the assault. (According to plaintiff, around the time of the incident, Heisz was seen playing sudoku and reading.)

Shortly after the incident, plaintiff started knocking on his cell door to be let out of his cell. Heisz unlocked the cell and plaintiff went to the dayroom and had an unrelated conversation with Wolfgram. During the conversation, Wolfgram observed that plaintiff's right eye had a cut above it and his right eyeball was red, but did not document plaintiff's injuries or send him to the health services unit. (According to plaintiff, Wolfgram never asked about his injuries and only "looked pleased" during their conversation.)

Pierce reported plaintiff's injuries later that day and plaintiff was escorted to the

6

health services unit and later to the Divine Savior Hospital for evaluation and further treatment. Plaintiff's injuries included "right eye conjunctival hematoma" (broken blood vessels under the tissue covering the white of the eye), a laceration above his right eye, sore ribs and a sore jaw.

Wolfgram and Heisz were placed on administrative leave for their failure to follow procedures. Wolfgram was placed on leave for failing to document plaintiff's injuries or send him to the health services unit and Heisz was placed on leave for allowing plaintiff to go to his cell while prisoners on temporary lockup status were in the showers and for inattentiveness.

OPINION

Plaintiff contends that defendants failed to protect him from the assault by Evans and Essex. Under the Eighth Amendment, prison officials are prohibited from acting with deliberate indifference to a "substantial risk of serious harm," including disregarding a risk of assault from other prisoners. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In this case, there are two groups of defendants: those who plaintiff says knew about the specific threat of assault and did nothing and those who plaintiff says "set up" the assault.

The first group of defendants includes defendants Morris, Nickel and Grams, who plaintiff says received written communications from Pierce explaining that Evans and Essex

7

were threatening plaintiff. However, in the same written communications, Pierce explains that Evans and Essex were currently on temporary lockup status. Plaintiff has not shown why any of these defendants would have had a reason to believe that Evans or Essex would be able to gain access to plaintiff and assault him while they were on temporary lockup status. Unless plaintiff had evidence that prisoners on temporary lockup status could roam around and gain access to other prisoners with relative ease (and that defendants were aware of this), there is no basis for drawing an inference that these defendants were aware of a "substantial risk" that plaintiff would be assaulted. Brown v. Budz, 398 F.3d 904, 911 (7th Cir. 2005) ("substantial risk" is "highly probable" attack). If plaintiff is correct, what these defendants knew is that a threat of attack existed that could become likely in the future, once Evans and Essex were released from temporary lockup. There is no saying whether they would have responded to *that* concern, once it came ripe.

The other group of defendants includes Wolfgram and Heisz. According to plaintiff, they orchestrated the attack on him because they were upset with plaintiff for reporting their misbehavior to superiors. If they did, they were certainly aware of the risk of assault and serious harm. The problem is, the evidence does not allow a reasonable juror to infer that they did so. First, with respect to Wolfgram, plaintiff does not even manage to establish a motive for him. Plaintiff has nothing but conclusory statements to support his suspicion that Wolfgram knew that Pierce or plaintiff had reported him to his superiors. With respect

8

to Heisz, plaintiff adduces evidence that Heisz knew that he and Pierce (or at least Pierce) had "gone over his head" about matters. However, plaintiff does not adduce any evidence to support a finding that Heisz or Wolfgram ever collaborated with Evans and Essex or encouraged them to assault plaintiff.

What plaintiff is left with are a few facts only slightly suggestive of his suspicions: (1) Wolfgram ordered afternoon showers for prisoners on temporary lockup status although the usual time for showers was in the morning; (2) Wolfgram called Heisz before allowing plaintiff to go to his cell; (3) Evans and Essex might have been released from their cell as early as 30 minutes before showering; (4) Wolfgram looked "pleased" when talking to plaintiff after the assault; and (5) both Wolfgram and Heisz violated prison policies related to the assault. These points do not allow an inference that Wolfgram and Heisz orchestrated the attack. Indeed, some of the evidence plaintiff adduces actually hurts the theory. Plaintiff states that Heisz had been seen playing sudoku and reading a book around the time of the incident, suggesting that he was simply not paying attention. Of course, mere inattentiveness would not give rise to an Eighth Amendment claim.

What about the possibility that Wolfgram and Heisz simply knew of a risk and let it happen? This theory is undercut by the lack of evidence that either one knew of any *specific threat* to plaintiff from Evans and Essex. Plaintiff has adduced no evidence that either was told of the threats Evans and Essex had been making or even of the possibility of tension

9

between plaintiff and Evans and Essex (caused by plaintiff's failure to warn them of a search).

Without evidence of a specific threat, it would not be enough to say that Heisz and Wolfgram knew that Evans and Essex might have access to plaintiff. (And it is not clear Wolfgram knew even this.) There would have to be a reason to think that plaintiff was put at risk by exposing himself to possible contact with Evans and Essex. Nothing about their temporary lockup status suggests it (they were in lockup for having intoxicants) and there is no evidence that defendants knew of any particular vulnerability of plaintiff's (or that he had any) or of any particular dangerous proclivity of Evans and Essex (or that they had any). In short, nothing suggests that Wolfgram and Heisz knew that plaintiff was walking into a dangerous setting.

Plaintiff was advised that he would have to adduce facts at summary judgment to support his theory that defendants were aware of a substantial risk of serious harm. Despite this warning, he has failed to do so. Therefore, I will grant defendants' motion for summary judgment.

ORDER

IT IS ORDERED that

1. The motion filed by defendants Mark Heisz, Brad Wolfgram, Alan Morris, Janel

10

Nickel and Greg Grams to strike plaintiff Janari L. McKinnie's summary judgment filings, dkt. #124, is DENIED.

 2. Defendants' motion for summary judgment, dkt. #88, is GRANTED.

 3. Plaintiff's motions to deny defendants' motion for summary judgment, dkts. ##109, 113, are DENIED.

 4. The clerk of court is directed to enter judgment in favor of defendants and close this case.

 Entered this 10th day of March, 2010.

        BY THE COURT:

        /s/

        _____
        BARBARA B. CRABB
        District Judge